AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the
### Middle District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched <br> or identify the person by name and address)* <br><br> a black VORTEX cell phone, further described in <br> Attachment A, currently located at 1501 N. 6th Street, <br> Room 204, Harrisburg, PA 17102 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 1:25-MC-  0015 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the _____ Middle _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. §2250(a) | Failure to register as a sex offender |

The application is based on these facts:

I, Deputy Christopher Warden, being first duly sworn, hereby depose and state as follows:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Christopher Warden, Deputy U.S. Marshal
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:  JAN. 3, 2025

*Judge's signature*

City and state:  Harrisburg, PA

Daryl F. Bloom, Chief U.S. Magistrate Judge
*Printed name and title*

## CONTINUATION OF AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## INTRODUCTION AND AGENT BACKGROUND

1.    (cont'd) I make the following statements in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.    I am a Deputy United States Marshal (DUSM) with the United States Marshals Service (USMS) in the Middle District of Pennsylvania (M/PA). I have been so employed since June 2022. In November 2022, I graduated from the United States Marshals Service Basic Deputy Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA. This training academy at FLETC included courses pertaining to the seizure, preservation, and search of digital evidence. Prior to being a DUSM, I was employed as a Deputy Sheriff in the Commonwealth of Pennsylvania for approximately six years. From November 2017 through June 2022, I was duly sworn with the United States Marshals Service Fugitive Task

Force in the Middle District of Pennsylvania—Williamsport. I have investigated and assisted in hundreds of fugitive investigations involving different violations of Federal and Pennsylvania law. At present, my responsibilities at the USMS include conducting criminal investigations and investigations to locate and apprehend fugitives from justice of federal and state criminal violations. As of June 2023, I am the District Sex Offender Coordinator (DSOC) for the USMS M/PA and am responsible for conducting federal investigations of individuals who have violated the Adam Walsh Act by failing to properly register under the Sex Offender Registration and Notification Act (SORNA).

3.    The facts and circumstances of this investigation have been summarized for the limited purpose of establishing probable cause for the warrant sought. No attempt has been made to set forth the complete factual history of this investigation or all its details.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.    The property to be searched is a black in color VORTEX cellphone with a damaged screen hereinafter the "Device." The Device is currently in the lawful possession of the United States Marshals Service (USMS). The details of how the Device came into the USMS's

possession is as follows. On 10/29/2024, members of the United States Marshals Service located and apprehended Eric Clarence HAGGINS Jr. on a federal arrest warrant in Annapolis, Maryland. Following the arrest, HAGGINS requested DUSM WARDEN obtain his cellphone from his family within 3 Marcs Ct, Apt C, Annapolis, MD, 21403. DUSM WARDEN retrieved HAGGINS cellphone from his family/associates and confirmed with HAGGINS that this was his device. This cellphone was seized and entered into USMS evidence.

5.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying and seizing electronically stored data particularly described in Attachment B.

6.     As set forth below, there is probable cause to believe that the Device contains evidence and instrumentalities of violations of Title 18 U.S.C. §2250(a) Failure to Register.

## PROBABLE CAUSE

7.     On November 29, 2023, the United States Marshals Service—Middle District of Pennsylvania received a Jail Facility Tip from the York County Sheriff's Office Central Booking Center regarding Eric Clarence HAGGINS Jr. The tip indicated that HAGGINS is a

registered sex offender in Maryland and that he had recently been arrested in York County, Pennsylvania. I reviewed the information and initiated an assessment.

8.     I learned the following based on my review of Maryland Court Documents and records, HAGGINS' Criminal History, documents and records associated with HAGGINS' Maryland Sex Offender Registration, HAGGINS' employment records, as well as police reports.

9.     On or about April 19, 2016, HAGGINS plead guilty by way of an Alford Plea in the Baltimore City Circuit Court of Baltimore County, Maryland to the offense of Sexual Abuse of a Minor, in violation of the Maryland criminal annotated code. On or about April 19, 2016, he was sentenced to 25 years of incarceration, with all but 7 years of this sentence to be suspended, followed by a 5-year period of probation supervision. As a result of this conviction, HAGGINS is required to register as a Sex Offender for a period of his lifetime.

10.     HAGGINS completed, signed, and acknowledged a State of Maryland – Department of Public Safety and Correctional Services Notice of Sexual Offender Registration requirements form on at least 12 occasions between February 17, 2021, and September 11, 2023.

11.    The following are some of the conditions that HAGGINS has acknowledged and signed in completing the Sex Offender Registration documents:

a. "You must register every address and physical location where you habitually live with your primary registration agency and in each county where you habitually live. You must notify the designated law enforcement unit that: you habitually live that county and provide them with the address or physical location. If you are absent from one ore [sic] more of the places you habitually live for 5 or more days you must notify local law enforcement within 3 days of that change."

b. "If you become homeless you must register once a week in person in each county where you habitually live."

c. "ALL RELEASES FROM ANY PERIOD OF INCARCERATION OR ARREST and all changes in your residence, employment, telephone numbers, internet identifiers, vehicle information must be reported within 3

<u>days</u> of the change to <u>each</u> designated law enforcement unit where you habitually live."

d. "If you permanently move to a jurisdiction outside of Maryland or to a foreign country you must, <u>3 days prior to the change</u>: 1) provide the new address, copies of passports, tickets, and travel itineraries to your new primary registration agency; 2) register with the designated law enforcement agency of the new jurisdiction; and 3) comply with any registration requirements in the new jurisdiction of residence."

e. "If you are absent from where you habitually live for 7 or more days due to travel for business or pleasure, you must, 21 business days prior to leaving: 1) notify, in writing, each designated law enforcement unit where you habitually live of your absence from the locations where you habitually live; 2) provide the addresses and locations of your temporary residences; and 3) provide the dates that you will be absent from the locations where you

6

habitually live. Copies of travel documents may be requested by law enforcement."

f. "If you begin or terminate employment in MD or another jurisdiction; or begin or end enrollment at an institution of higher education you must, <u>3 days prior to the change</u> register with the designated law enforcement agency in that jurisdiction."

g. "Your birthdate, physical description, address, employment, vehicle, and conviction information will be posted on the Sex Offender Registry website."

h. "A registrant may not knowingly fail to register, knowingly fail to provide the written notice required under §11-705 of this subtitle or knowingly provide false information of a material fact as required by this subtitle. A registrant may not knowingly fail to provide the information required under §11-706 of this subtitle. A person who violates these provisions for a first offense is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not

exceeding $5,000 or both, and for a second or subsequent offense, is guilty of a felony and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both."

i. "I swear and affirm that I have read or have been read the above requirements and have been provided a copy of this form. I further understand that I must comply with Criminal Procedure Article §11-701 to 11-722 as it relates to my reporting and registration responsibilities and have been explained the penalties of violating such laws."

12. Due to the COIVD-19 Pandemic, HAGGINS administratively re-registered via phone on: February 23, 2021; April 20, 2021; April 29, 2021, along with a change of address; May 24, 2021; and August 19, 2021.

13. On November 10, 2021, HAGGINS registered at an address of 3845 W. Forest Park Ave, Apt 9, Baltimore, MD, 21216. HAGGINS did not report any employment. On January 27, 2022, and April 21, 2022, HAGGINS re-registered with no reported changes in residency or employment.

14.    On June 2, 2022, HAGGINS re-registered along with a Change of Address to 2207 Elsinore Ave, Baltimore, MD, 21216. HAGGINS did not report any employment during this re-registration.

15.    On July 11, 2022, HAGGINS re-registered with no change in residency. HAGGINS reported being employed at Von Moving and Storge. On October 3, 2022, HAGGINS re-registered with no reported changes in residency or employment.

16.    On October 17, 2022, Detective Raynard Johnson of the Baltimore City Police Department added an investigative note to HAGGINS' Offender Watch Report which states, "Offender's address was verified by owner of house. Ms. Rosa Diaz advised that Offender rents a room at 2207 Elsinore Ave. Offender advised that he and his children's mother are constantly at odds over child support and she is constantly trying to get him in trouble or ruin his life. Offender stated that his GF lives in PA where he sometimes visits her but he does not live there with her. Address verification conducted."

17.    On December 27, 2022, HAGGINS re-registered with no reported changes in residency. HAGGINS reported being employed at Chesapeake International Trucking in Portsmouth, VA. On March 15,

2023, June 7, 2023, and September 11, 2023, HAGGINS re-registered with no reported changes in residency or employment.

18.    Since June 2, 2022, HAGGINS has been registered as residing at 2207 Elsinore Ave, Baltimore, MD, 21216. Between February 17, 2021, and September 11, 2023, none of HAGGINS' sex offender registrations list any vehicles.

19.    On November 17, 2023, the Pennsylvania State Police—York Barracks conducted a traffic stop on a 2012 Honda Accord bearing PA Registration: 3ET8954, and HAGGINS was identified as the driver of the vehicle. The Pennsylvania State Police conducted an investigation, and HAGGINS was charged under two different dockets: 1) one involving charges of PWID, Possession of Firearm Prohibited, Carrying loaded weapon, driving while operating privilege suspended or revoked, following too closely, and improper sunscreening; and 2) another case for Escape, Flight to Avoid Apprehension/Trial/Punishment, and Evading Arrest of Detention on Foot.

20.    During this incident, HAGGINS' significant other, Tiffany Glover arrived at the scene of the traffic stop in a white Dodge Charger bearing PA Registration LZF-3282. I conducted a query utilizing JNET

of Pennsylvania Registration: LZF-3282. According to the Pennsylvania

Department of Motor Vehicle records, HAGGINS is the co-owner and

co-registrant of the 2018 Dodge Charger bearing Pennsylvania

Registration: LZF-3282. This vehicle is registered to Tiffany Mercedes

Glover and Eric Clarence HAGGINS JR at 7969 Erinvale Lane, Seven

Valleys, PA, 17360. According to the Pennsylvania Department of

Transportation (PennDOT) records, the title date is September 15,

2022. I reviewed HAGGINS' Maryland Sex Offender Registrations and

learned that this vehicle is not associated with HAGGINS' sex offender

registration information, and neither is this address.On November 17,

2023, HAGGINS was transported to York Central Booking for

processing and arraignment on felony and misdemeanors charges. He

was subsequently incarcerated at the York County Prison on Docket #

MJ-19304-CR-0000308-2023 and Docket # MJ-19304-CR-0000309-2023.

Bail was set at $50,000 on each case, which was posted on November

18, 2023. HAGGINS was released from incarceration.

21.    HAGGINS was due to re-register with the Baltimore Police

Department Sex Offender Registry on or before December 11, 2023.

HAGGINS failed to update his registration as required by law.

22.   On December 12, 2023, the Baltimore Police Department obtained an arrest warrant for HAGGINS, charging him with Failure to Register as a Sex Offender. The extradition on this warrant is In-State Pick-Up Only.

23.   I contacted PSP Megan's Law Unit to inquire if HAGGINS has ever attempted to register as a sex offender in Pennsylvania. According to Sean Reynolds, who is a Legal Assistant with the PSP Megan's Law Unit, HAGGINS is not registered as residing or being employed in the Commonwealth of Pennsylvania, and they have no record of HAGGINS registering or attempting to register in Pennsylvania.

24.   On or about 01/18/2024, Eric HAGGINS failed to appear at the Preliminary Hearing to answer to the charges under Docket # MJ-19304-CR-0000308-2023 and Docket # MJ-19304-CR-0000309-2023. The extradition associated with these warrants is listed as East of the Mississippi Only, No Bond.

25.   On 03/12/2024, I made telephonic contact with Probation Officer Pamela Ellis of the Maryland Probation and Parole. PO Ellis related that HAGGINS was transferred to her caseload in January

2024, and she has never met HAGGINS or had contact with him. PO Ellis reviewed the case notes and related that HAGGINS last had contact with probation on November 20, 2023. HAGGINS reported in-person on this date and checked-in to the kiosk but did not wait to meet with his probation officer. Probation then made telephonic contact with HAGGINS on this date. HAGGINS told the officer about his arrest in Pennsylvania for DUI and PWID. HAGGINS reported that leading up to his arrest he had been driving in Pennsylvania for work. Probation instructed HAGGINS to report on December 8, 2023, with his most recent paystub and a letter from his employment verifying that he was in Pennsylvania for work. HAGGINS did not provide this verification, and he did not report on December 8. The last time that Probation and Parole had contact with HAGGINS at his approved address of 2207 Elsinore Ave was on 10/27/2023. The last phone number Probation and Parole had for HAGGINS was (443) 953-3993.

26.    In furtherance of the investigation, The United States Marshals Service applied for two search warrants to search the contents of the cellphone that was seized from Eric HAGGINS when he was arrested by PSP. Both search warrants were approved and were

docketed at 1:2024-MC-0089 and 1:2024-MC-0594, respectively.
Pursuant to these warrants, additional evidence was located indicating
that HAGGINS had committed violations of 18 USC 2250a Failure to
Register, 18 USC 922g Possession of a Firearm by Prohibited Person, 21
USC 841(a) PWID Cocaine and Marijuana, and 18 USC 924(c)
Possession of a Firearm in Furtherance of Drug Trafficking.

27.    Employment documents, cellphone location data, contents of
text messages, interviews, and additional evidence revealed that
beginning on or about April 1, 2022, HAGGINS did knowingly fail to
register and update a registration as required by SORNA.

28.    On 08/07/2024, the Grand Jury sitting in Harrisburg, PA
returned a 4-count federal indictment, charging Eric HAGGINS with
violations of 18 USC 2250a Failure to Register, 18 USC 922g Possession
of a Firearm by Prohibited Person, 21 USC 841(a) PWID Cocaine and
Marijuana, and 18 USC 924(c) Possession of a Firearm in Furtherance
of Drug Trafficking. A federal arrest warrant was issued for HAGGINS'
arrest under Docket # 1:2024-CR-00208.

29.    The criminal and fugitive investigations revealed that
HAGGINS had utilized a white Dodge Charger bearing PA

14

Registration: LZF3282 (which was co-registered to him), a 2012 grey Honda Accord bearing MD Registration: 3ET8954 (which he was driving when arrested by PSP), a 2016 grey Jeep Wrangler bearing PA Registration: LYW0726, and a law enforcement report associated HAGGINS with a white 2018 Jeep Wrangler Unlimited bearing MD Registration: 3GA2922. HAGGINS had not informed the Maryland Sex Offender Registry or the Pennsylvania Sex Offender Registry that he drove any of these vehicles.

30.    On October 28, 2024, I conducted an interview with Rosa Elsy Diaz at 2207 Elsinore Ave, Baltimore, MD, 21216. Again, this is HAGGINS' last known registered address with the Maryland Sex Offender Registry. In summary, Diaz indicated the following. Eric HAGGINS reached out to Diaz via a posting she made on Facebook advertising a room for rent at this address. Based on a text message that was reviewed between HAGGINS and Diaz, it is believed that HAGGINS began living at this address between August and September 2022. HAGGINS rented a room at this address for $400 a month. Diaz was asked what kind of belongings HAGGINS had with him when he lived at the residence. Diaz indicated that he had a tote, an air

mattress, and some clothes. She went on to say that he did not have much. Diaz related that HAGGINS only stayed at this address '1 or sometimes 2 nights a week.' I asked if the police or probation ever came to 2207 Elsinore Ave to meet with HAGGINS, and Diaz responded in the affirmative. I asked if there was ever an occasion when HAGGINS was already at the residence when he met with the police or probation. Diaz responded in the negative, and she stated that HAGGINS always drove from somewhere else to the house to meet with them outside. She knew HAGGINS to drive a white Dodge Charger, and she recalled him driving a white truck on one occasion to the house. Diaz permitted me to review the messages and take screenshots of the messages between her and HAGGINS on her phone. The screenshots corroborate that HAGGINS was infrequently at his registered address. Diaz indicated that HAGGINS moved out of this address in November 2023. When asked if she knew where HAGGINS was moving to, Diaz stated that HAGGINS told her that he was going to be arrested, so she thought he was going to jail.

31.   Since November of 2023, HAGGINS' whereabouts have been unknown, and he has not reported any updated address to any sex offender registry.

32.   On October 29, 2024,, members of the United States Marshals Service located and apprehended Eric Clarence HAGGINS JR. on the federal arrest warrant at 3 Marcs Ct, Apt C, Annapolis, MD, 21403.

33.   While preparing HAGGINS for transport, I attempted to read a USM-309 Waiver of Rights form to HAGGINS. HAGGINS interrupted me and stated something to the effect of, 'I don't need you to read that because I know my rights, and I'm not going to talk to you.' I respected HAGGINS' wishes and secured him in a vehicle for transport.

34.   Once in custody but prior to our departure, HAGGINS requested that I obtain his cellphone from his family within 3 Marcs Ct, Apt C. I retrieved HAGGINS cellphone (the Device) from his family/associates and confirmed with HAGGINS that this was his device. The Device is a black in color VORTEX cellphone with a damaged screen.

35.    DUSM Josh GOLOB and I began transporting HAGGINS to the Sylvia H. Rambo Courthouse in Harrisburg, PA for processing and initial court proceedings.

36.    A few minutes into the drive, HAGGINS initiated a conversation with me and began asking questions about his York County Criminal Case as well as what his arrest was all about. I told HAGGINS that the reason I wanted to read him his rights was so I could explain more about his case and talk to HAGGINS. HAGGINS responded by saying something to the effect of, he understood that, but did not want his "peoples" and everyone watching to think that he was talking to the Police. I told HAGGINS, if he would like, I can pull over to go over his rights with him and then we can have a video recorded discussion. HAGGINS indicated that he would like that.

37.    Beginning at approximately 0902 hours, I started a video recorded interview with HAGGINS. A USM-309 Waiver of Rights Form was filled out and signed by HAGGINS and I.

38.    Since HAGGINS went on the run in November of 2023, he had been bouncing between Annapolis and Baltimore, Maryland. HAGGINS stated that he has not been in Pennsylvania since his arrest.

18

39.  I asked HAGGINS his understanding of his sex offender registration requirements. HAGGINS indicated that he must register every three months, he must notify the registry of certain changes. HAGGINS has not registered every three months as required since going on the run, and he has not provided an updated address as required after vacating 2207 Elsinore Ave, Baltimore, Maryland.

40.  I asked HAGGINS about his new phone. He indicated that it is a government phone that only works on Wi-Fi. He can text from the phone. HAGGINS does not know the full number for his new phone but stated that he thinks it is a (940) number. It should be noted that the last phone number associated with HAGGINS' Maryland Sex Offender Registration does not have a (940) area code. HAGGINS confirmed that the only cellphone he has is the cellphone that was retrieved from his family post-arrest.

41.  The information contained in the Device is likely to reveal information regarding HAGGINS' locations, where he was residing, and who he was communicating with while he was in Failure to Register status. The information contained in the Device is also likely to assist in identifying other potential co-conspirators and individuals engaged in

19

criminal activity who HAGGINS was communicating with while on the run from law enforcement.

42.    Based on my training, knowledge, and experience, I know that fugitives and individuals who are actively engaged in criminal activity utilize cellphones as a wireless telephone, GPS devices, digital cameras, and they utilize mobile applications, and social media to communicate with others, specifically associates and family members. The data contained on a cellphone often contain photos of the user and family members/associates, geo-location data with dates and times, and the content of messages often indicates one's plans and locations. Further, the data contained on a cellphone often indicates ownership as well as cellphone provider and account information.

43.    Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the Device, listed in Attachments A to this affidavit, which is incorporated herein by reference, contains evidence and fruits of the crime which will aid in the investigation of violations of Title 18 U.S.C. §2250(a) Failure to Register. Therefore, this warrant seeks to search all records on the Device described in Attachment B that relate to these violations.

44.    The Device is currently in storage at United States Marshals Service, 1501 N. 6th Street, Room 204, Harrisburg, PA, 17102.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the USMS.

## TECHNICAL TERMS

45.    Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications,

21

wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. Wireless telephones typically contain programs called applications or apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using

photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the

23

model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna

24

receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may

also include global positioning system ("GPS") technology
for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP
address") is a unique numeric address used by computers
on the Internet.  An IP address is a series of four
numbers, each in the range 0-255, separated by periods
(e.g., 121.56.97.178).  Every computer attached to the
Internet computer must be assigned an IP address so that
Internet traffic sent from and directed to that computer
may be directed properly from its source to its
destination.  Most Internet service providers control a
range of IP addresses.  Some computers have static—that
is, long-term—IP addresses, while other computers have
dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers
and other electronic devices that communicate with each
other.  Due to the structure of the Internet, connections
between devices on the Internet often cross state and

international borders, even when the devices

communicating with each other are in the same state.

46.     Based on my training, experience, and research, and from

consulting the manufacturer's advertisements and product technical

specifications, I know that the Device has capabilities that allow it to

serve as a wireless telephone, digital camera, GPS navigation device,

PDA, and to access the internet. In my training and experience,

examining data stored on devices of this type can uncover, among other

things, evidence that reveals or suggests who possessed or used the

device and location data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

47.     Based on my knowledge, training, and experience, I know

that electronic devices can store information for long periods of time.

Similarly, things that have been viewed via the Internet are typically

stored for some period of time on the device.  This information can

sometimes be recovered with forensics tools.

48.     *Forensic evidence.*  As further described in Attachment B,

this application seeks permission to locate not only electronically stored

information that might serve as direct evidence of the crimes described

on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The

29

electronic device is an instrumentality of the crime

because it is used as a means of committing the criminal

offense. The electronic device is also likely to be a storage

medium for evidence of crime. From my training and

experience, I believe that an electronic device used to

commit a crime of this type may contain: data that is

evidence of how the electronic device was used; data that

was sent or received; and other records that indicate the

nature of the offense.

49. *Nature of examination.* Based on the foregoing, and

consistent with Rule 41(e)(2)(B), the warrant I am applying for would

permit the examination of the device consistent with the warrant. The

examination may require authorities to employ techniques, including

but not limited to computer-assisted scans of the entire medium, that

might expose many parts of the device to human inspection in order to

determine whether it is evidence described by the warrant.

50. *Manner of execution.* Because this warrant seeks only

permission to examine a device already in law enforcement's possession,

the execution of this warrant does not involve the physical intrusion

onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

I submit that these continuation sheets support probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## ATTACHMENT A

The property to be searched is Eric HAGGINS' black in color VORTEX cellphone with a damaged screen hereinafter the "Device". On October 29, 2024, HAGGINS confirmed the Device was his cell phone and the Device was then taken into United States Marshals Service custody. The Device is currently located in evidence at the United States Marshals Service, 1501 N. 6th Street, Room 204, Harrisburg, PA, 17102.

This warrant authorizes the forensic examination of the Device and the data extracted from the Device for the purpose of identifying the electronically stored information described in Attachment B.

# **ATTACHMENT B**

1.    All records and information on the Device described in

Attachment A that relate to violations of 18 USC 2250(a) Failure to

Register and involve **Eric Clarence HAGGINS Jr.**, including:

     a.  location data;

     b.  records of incoming and outgoing voice communications;

     c.  records of incoming and outgoing text messages;

     d.  the content of incoming and outgoing text messages;

     e.  voicemails;

     f.  images and their metadata;

     g.  videos and their metadata;

     h.  voice recordings;

     i.  contact lists;

     j.  the content of incoming and outgoing text e-mails;

     k.  data and emails from email applications (including Google Mail, or Gmail, Yahoo!, and Outlook),

     l.  data from third-party applications (including social media applications like Facebook and Instagram and messaging programs like WhatsApp and Snapchat);

     m. browser history;

     n.  evidence of the times the Subject Devices were used;

     o.  passwords, encryption keys, and other access devices that may be necessary to access the Subject Devices;

     p.  any information recording HAGGINS' schedule or travel;

q. all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

2